### TRADERS & GENERAL INS. CO. v. STANALAND et al.

### No. 6160.

Court of Civil Appeals of Texas. Texarkana.

May 19, 1945.

Rehearing Denied May 24, 1945.

56

Lightfoot & Robertson, of Dallas, Wynne & Wynne, of Longview, and Dan P. Johnston, of Dallas, for appellant.

Fulmer & Fairchild and Vernis Fulmer, all of Nacogdoches, for appellees.

WILLIAMS, Justice.

In this suit, a workmen's compensation case, against Traders & General Insurance Company by Mrs. Lizzie Stanaland, the alleged dependent of Ed Miller, the deceased employee, joined by Virgil Stanaland, her husband, she was awarded a lump sum judgment and recovery by an undertaker for funeral charges. Mrs. Stanaland, a half-sister of deceased, together with two other half-sisters and two half-brothers of deceased, jointly filed notice of deceased's accidental death, claim for compensation, and upon the Industrial Accident Board's denial of compensation to any of them, they jointly gave notice of their dissatisfaction with the award, their refusal to abide by the same, and that they would appeal by filing suit as required by the Compensation Act. Thereafter, this suit was timely filed by Vernis Fulmer, an attorney, in behalf of Lizzie Stanaland and husband. The petition alleged the existence of the surviving five half-sisters and brothers but negatived the existence of any dependency of any of them except Mrs. Stanaland. No person falling within any class enumerated in Article 8306, Sec. 8a, of the Texas Compensation Act, survived deceased, unless a dependent half-sister or half-brother is within the class of a dependent brother or sister. After defendant had presented a plea in abatement for want of parties plaintiff, that is, all of the same class had not joined in the suit, Mr. Fulmer, the attorney who had represented all of them in all above proceedings before the Accident Board, then filed, after leave of the court first had been obtained, a plea in which the other half-sisters and half-brothers disclaimed all and any interest and claim as a beneficiary of deceased. They did not testify nor were they otherwise before the court. The court's finding of fact incorporated in the judgment that these persons of the half-blood other than Mrs. Stanaland were not dependents is not without support in the evidence. If it be granted that they not being before the court were not bound by such a finding and that the attorney was without legal authority to file such disclaimer, as urged by appellant, no reversible error is presented, for as held in Consolidated Underwriters v. Adams, Tex.Civ.App., 97 S.W.2d 323, compliance with Section 5 of this Article (8307, R.C.S., Vernon's Ann.Civ.St. art. 8307, § 5) requiring suit to set aside

compensation award within twenty days after date of giving notice of appeal is mandatory and jurisdictional, the statute being one of limitation. Suit to set aside the award of the Accident Board was never filed by any of the class except Mrs. Stanaland.

It is asserted that Mrs. Stanaland as a half-sister is not a member of any class of beneficiaries named in Article 8306, Sec. 8a, supra, which enumerates those eligible to receive death benefits as follows: The surviving husband or wife, minor children, parents and step-mother, without regard to the question of dependency, "dependent grandparents, dependent children and dependent brothers and sisters of the deceased employee." This precise question whether the enumeration of a dependent sister as a beneficiary under the Act will include a dependent half-sister has not heretofore been presented to a Texas appellate court for decision. The question could have been raised but was not passed upon in Security U. Casualty Co. v. Kelly, Tex.Civ.App., 299 S.W. 286, and Security U. Ins. Co. v. Reed, Tex.Civ.App., 42 S.W.2d 494, wherein half-brothers and half-sisters along with those of the whole blood recovered in the trial court.

█ It is thought that the use of the generic term dependent "brothers and sisters" in Article 8306, supra, as a class of beneficiaries includes a half-brother or half-sister. As stated in People v. Elliff, 74 Colo. 81, 219 P. 224, 225, an opinion by the Supreme Court of Colorado, "The decisions in this country, as to the meaning of these words (brothers and sisters) * * * are based upon the proposition that whenever the words 'brother' and 'sister' are used in a statute, without any qualifying words, they include half-brother or half-sister * * *." To the same effect see other cases therein cited including Stockton v. Frazier, 81 Ohio St. 227, 90 N.E. 168, 26 L.R.A.,N.S., 603; Watkins v. Blount, 43 Tex.Civ.App. 460, 94 S.W. 1116; Hocker v. Stevens, Tex.Civ.App., 18 S.W.2d 842, writ refused. The conclusions reached in Consolidated Underwriters v. Ward, Tex. Civ.App., 57 S.W.2d 964, and in Pierson v. National Fire Proofing Corp., 117 N.J.L. 600, 190 A. 73, cited by appellant, in effect recognize the above rule but reach a different result by applying the rule of exclusion.

Appellant attacks the sufficiency of the court's definition of the term "dependent" and the refusal to amend such definition or give appellant's requested instruction. Sufficiency of the evidence to support a finding of "dependency" is also raised.

Deceased and his wife were divorced in September, 1940, at which time he moved to plaintiffs' home, carrying with him a phonograph, bedding and other household goods which he gave to plaintiffs. He lived with plaintiffs until the spring of 1942, but paid no board. During this period deceased, a day-laborer, earned $1 a day for the days he worked on nearby farms. During this period, according to plaintiffs' testimony, deceased spent perhaps $50 for clothes for the family, gave Mrs. Stanaland sometimes $5, sometimes $10 and sometimes $15, and at various times bought fruit, groceries and other items for the home; and also helped with the milking, washing, gardening and other chores about the farm.

In the spring of 1942, deceased moved to Kilgore, Texas, where he continued to live until his death, December 10, 1943. During this period as a night watchman or laborer he earned $18 a week with the exception of the last six or eight weeks of his life when his wages ran slightly in excess of $30 a week. During this period he paid a minimum of $6.50 weekly for board and washing. In September, 1943, deceased bought a $25 United States bond, and in 1941, a $205 insurance policy at a weekly premium cost of 25¢, both made payable to Mrs. Stanaland. Two hundred dollars in savings was on deposit in his name in a local bank at his death. During this period at Kilgore he made a trip to and visited in Houston, and according to plaintiffs, also made trips to and visited plaintiffs near Garrison, Texas, every two or three weeks, but "then it would be months before he came down." Some of the evidence reflects that deceased enjoyed his drinks. According to his statement in a letter, he played pool every night. According to the testimony given by plaintiffs, the deceased averaged writing once every two weeks after he went to Kilgore and during that period would either enclose in a letter or hand Mrs. Stanaland money on his visits and she "imagined" it averaged $15 or $18 a month; in July, 1943, she wrote and asked deceased for some of his old clothes to wear in the field and he sent her three pairs of overalls which she patched up and used; and that deceased's help was about as much as her husband's and she depended upon deceased

for this help. The evidence reflects no checks given to her. Three letters were introduced; one written by her which requested the old clothes; another by her written in November, 1943, wherein she tells deceased she might have to be operated on for piles and inquired "how to get you if we should want to call you"; and his reply, dated November 14, 1943, in which he wished her well in the operation, informed her where he boarded and could be reached and described his good job, his good health and good pool playing. Shortly before his death, deceased had expressed his intent to carry some Christmas gifts to plaintiffs and spend Christmas with them.

Ed Miller was fifty-eight years of age at the time of his death on December 10, 1943, the plaintiff around thirty-six. Her husband, who had farmed all his life as a tenant farmer, then resided with his wife and eight children on a farm near Garrison, Nacogdoches County, Texas. Their oldest child was sixteen, the others ranged from eighteen to twenty-four months apart. Plaintiffs owned at Ed Miller's death three work mules, nine cows and some calves, a wagon, plows and other farm equipment which together with his crops of 1943 were under a mortgage of $1300. Each year he had to borrow money to make a crop. Plaintiffs moved to a 158-acre farm·in January, 1943, on which they now reside. The deed, dated August 9, 1943, into Virgil S·analand recites $343 cash paid and execution by him of a $2,000 note payable $200 annually. Ivan Stanaland, a brother of Virgil, advanced the $343 cash consideration. It is the testimony of Ivan and plaintiffs that some three or six months or more before the purchase of the farm when the three were discussing the purchase of some farm and the probable difficulties of meeting deferred payments, that deceased had stated, "What do you think I am working for? I will see that you do not fall down—I will pay the notes."

■ The court instructed the jury that "By the word 'dependent', as used in the next issue, is meant a person who relied in whole or in part upon the assistance he or she received for support from the deceased." Special issue No. 7, submitted in connection with above definition, reads: "Do you find from a preponderance of the evidence that Lizzie Stanaland was a dependent of Ed Miller deceased, at the time of his death?" Defendant excepted to above definition in that such instruction

would permit the jury to find dependency though the contributions, if any, were trivial or just occasional gifts and failed to require the jury to find that the deceased made contributions which in a substantial way aided and assisted the recipient thereof to live. In connection therewith, defendant tendered a definition, which reads: "By the word 'dependent', as used in this charge, is meant a person relying in whole or in part upon the labors of deceased for support enabling the recipient in a substantial way to live." Plaintiffs' counsel in his closing argument, excepted to at the time, argued to the jury: "Suppose he gave her a dollar a month, or ten cents a week, put it that low if you have a mind to do it, but you have no evidence to put it that low, but if you had, it would still be in part." The requirements to meet the test of dependency as contemplated by Article 8306, supra, would not be met by such an insignificant contribution. This argument under the court's instruction above set out illustrates the deficiency complained of in the charge. Under the facts and circumstances disclosed by this record, it is thought that the tendered instruction of defendant, or one similar in effect, should have been given the jury to meet the deficiency complained of so as to comply with the requirements of dependency as discussed and pointed out in Texas Employers Ins. Ass'n v. Arnold, 127 Tex. 245, 92 S.W.2d 1019, and Federal Underwriters Exchange v. Hall, Tex.Sup., 182 S.W.2d 703.

■ Appellant vigorously contends that deceased's earnings of $1 a day during 1940-1941 and his weekly earnings for the last eighteen months of his life would not permit such contributions as claimed by plaintiffs when his savings, social, living and traveling expenses are considered. Appellant further asserts that as Mrs. Stanaland had a husband, both in their thirties, with several able-bodied members in the family to help in farming, the owner of a farm, the livestock and farm equipment, such facts do not meet the requirements of dependency by her on deceased, age fifty-eight, at the time of his death. Although some of the matter thus urged is persuasive and may go to the weight of this evidence, it is possible for deceased under this record to have contributed the $15 or $18 monthly as plaintiffs contend, and, if so, we would not hold as a matter of law that such help under all the other facts first herein

set out would not be sufficient to meet the test of dependency as contemplated by Article 8306, supra.

We pretermit a discussion of the other points presented.

The judgment is reversed and the cause remanded.